IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANGELA S. BROWN,
  *Plaintiff*,

v.                                        Civil Action No. ELH-12-3704

DAVID McCLURE, *et al.*,
  *Defendants*.

**MEMORANDUM OPINION**

Angela S. Brown, the self-represented plaintiff, was terminated from her employment as a Bus Operator with the Maryland Transit Authority ("MTA") for talking on her cellular phone while driving, in violation of MTA rules. Defendant Amalgamated Transit Union Local 1300 ("Local 1300"), her former bargaining representative, invoked the arbitration provisions of its collective bargaining agreement with the MTA and, on Ms. Brown's behalf, challenged her dismissal, claiming it was without just cause. In a written decision, the arbitrator upheld the termination. Thereafter, plaintiff initiated this suit against Local 1300 and defendant David McClure, the President of Local 1300, claiming, among other things, that "[t]he Union and MTA are not following the rules they made[ ]," and "are picking and choosing who they want to get their job back." *See* Complaint (ECF 1). Plaintiff alleges that other MTA employees, who were also members of Local 1300, were not discharged from employment or were reinstated after engaging in similar or more serious misconduct. *See generally id.* at 2-5.

Construing plaintiff's complaint liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and drawing from both her allegations and the Civil Cover Sheet filed with her pleading, *see* ECF 1-1, I discern six distinct claims that she appears to assert against defendants: (1) breach

of the duty of fair representation, in violation of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(2); (2) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; (3) violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206 & 207; (4) violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2612; (5) fraud; and (6) wrongful discharge.[1]

Defendants have moved to dismiss for lack of subject matter jurisdiction, under Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, under Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment ("Motion") (ECF 7). In support of the Motion, defendants filed a memorandum of law ("Memo") (ECF 7-1) and several exhibits, including a copy of the Collective Bargaining Agreement between Local 1300 and the MTA ("CBA") (ECF 7-2); a copy of the Arbitration Opinion and Award ("Arbitration Award") (ECF 7-3); the Affidavit of David McClure (ECF 7-4); and an unreported opinion authored by Judge William N. Nickerson in *Gloria Jones v. Amalgamated Transit Union Local 1300*, Civ. No. 04-1488 (D. Md. Dec. 8, 2004) (ECF 7-5).[2] Plaintiff filed a one-page opposition to the Motion ("Opposition" or "Opp.," ECF 9). Defendants did not file a reply.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I will grant the Motion to dismiss as to plaintiff's federal claims under Fed. R. Civ. P. 12(b)(6). As to the State law claims, I decline to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Therefore, I will dismiss the State claims, without prejudice to plaintiff's right to pursue them in State court.

---

[1] The Court has federal question jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331. I will discuss, *infra*, the Court's discretion under 28 U.S.C. § 1367(a) to exercise supplemental jurisdiction over the claims founded on state law.

[2] Judge Nickerson's opinion in *Jones* is not available on Lexis or Westlaw.

## FACTUAL BACKGROUND[3]

Plaintiff was formerly employed as an MTA Bus Operator, a position that she held for approximately fourteen years. *See* Arbitration Award at 3. On August 18, 2010, a video camera installed on her bus recorded her taking her hands off of the steering wheel on multiple occasions in order to use her cellular phone, to eat, and to look in a notebook, all while driving in traffic. *Id.* at 5-6. The video also showed that plaintiff was not wearing a seatbelt. *Id.* at 3. Although there were no passengers on the bus at the time, the MTA terminated plaintiff's employment based on violations of MTA policy, including prohibitions on cellphone use while driving, as well as driving without a seatbelt and eating on the bus. *Id.* at 7-8.[4]

At the time, plaintiff was a member of Local 1300, which was a party to a collective bargaining agreement with the MTA. *See* CBA. Article 8, § 1 of the CBA establishes a grievance procedure for "[a]ny employee . . . who claims to be aggrieved by any action of MTA, whether occasioned by discharge or other discipline or whether because of alleged discrimination against him/her by reason of the failure to apply to him/her any of the benefits of this Agreement to which he/she believes himself/herself entitled . . . ."

In accordance with the CBA, plaintiff filed a grievance to challenge her dismissal, which the MTA denied. In response, Local 1300 invoked the arbitration provisions of the CBA,

---

[3] Plaintiff's Complaint does not provide any factual background for her claims. Instead, she lists the names of other individuals who allegedly engaged in misconduct but were not terminated or were reinstated. However, because plaintiff has sued defendants as a result of the arbitration over her discharge, I have looked to the Arbitration Award for the factual background. Although plaintiff claims that her discharge was the result of discrimination because other MTA employees who committed similar or more serious infractions were not terminated, plaintiff has not disputed the underlying factual basis for her discharge.

[4] The Operators Rule Book provides, in pertinent part: "Employees who neglect the required duties of their position, or are in violation of rule, safety regulations, bulletins, orders or other instructions shall be subject to disciplinary actions or dismissal." ECF 7-3 at 3.

- 3 -

asserting that the MTA lacked just cause to discharge plaintiff. Article 9, Section (1) of the Collective Bargaining Agreement states:

> Should any grievance be unsettled as provided in Article (8) hereof, or should any difference arise between MTA and the UNION as to the meaning or application of any provision of this Agreement, which after reasonable effort cannot be mutually adjusted, either MTA or the UNION may within forty-five (45) days thereafter, request in writing that the dispute be submitted to arbitration.

A hearing was held on August 24, 2011, at which Local 1300 and the MTA "were each afforded full opportunity to present witnesses and documents and to cross-examine witnesses and challenge documents offered by others." Arbitration Award at 1. At the hearing, plaintiff "did not deny engaging in the activities shown on the [video] tape." *Id.* at 6. Instead, she explained that the phone calls concerned her twenty-three year old son, who suffers from Down Syndrome and Sickle Cell Anemia, and were made on an emergency basis. *Id.* at 6-7. She claimed that her son had called her because he was having difficulty breathing, and that she called her daughter for help. *Id.* at 7. According to plaintiff, she looked in the notebook to find her daughter's phone number. *Id.* However, she subsequently admitted that she was not certain that the phone calls at issue were with her son and daughter. *See id.*

The arbitrator issued a written decision on August 29, 2010. *See id.* Based on plaintiff's violation of MTA rules, the arbitrator concluded that "dismissal was an appropriate penalty," and upheld the MTA's decision to discharge Ms. Brown. *Id.* at 20.

As noted, plaintiff complains that other individuals employed by the MTA, some of whom she has identified by name, engaged in similar misconduct but did not lose their jobs, or were reinstated after being discharged. *See generally* Complaint. She also complains that the arbitration procedure took longer than three weeks; that Local 1300 did not provide her with a

copy of the arbitration decision when it was issued; and that there was "wrong information" in her "arbitration papers," which she does not further specify. *See generally id.*

## Standard of Review

I will evaluate the Motion as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[5]

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008); *see Aschroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011). Whether a complaint adequately states a claim for relief is judged by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Twombly*, 550 U.S. at 555.

Rule 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although the plaintiff need not include "detailed factual allegations," the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555. To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and

---

[5] Defendants' jurisdictional challenge is premised on their claim that plaintiff's complaint does not identify any federal statute or other basis for federal question jurisdiction, or plead another basis for jurisdiction in federal court. In my view, because claims under several federal statutes can be gleaned from plaintiff's complaint, dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is not appropriate (except as to plaintiff's Title VII claims). Moreover, as I discuss, *infra*, I do not find it necessary to convert the motion to a motion for summary judgment.

- 5 -

unlikely." *Id.* at 556 (brackets in original) (internal quotation marks omitted). A complaint is insufficient if it provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, the court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see, e.g., Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied* ___ U.S. ___, 132 S. Ct. 402 (2011). Moreover, a court "is not to consider matters outside the pleadings or resolve factual disputes . . . ." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citation omitted); *see Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011) (recognizing that "dismissal is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief that is plausible on its face.'") (Citation omitted).

Typically, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). But, "in the relatively rare

circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint," the court may resolve the applicability of a defense by way of a Rule 12(b)(6) motion. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "This principle only applies, however, if all facts necessary to the affirmative defense '*clearly appear*[ ] *on the face of the complaint*,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

Generally, in resolving a Rule 12(b)(6) motion, if a court considers material outside of the pleadings, "the motion must be treated as one for summary judgment under Rule 56," in which case "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). There are some limited exceptions, however, by which a court may consider exhibits without converting the motion to one for summary judgment.

For instance, the court may properly consider documents "attached to the complaint, as well those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted); *see Am. Chiropractic Ass'n. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). Additionally, facts and documents subject to judicial notice may be considered by a court, without converting the motion under Rule 12(d). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir.), *cert. denied*, ___ U.S. ___, 132 S. Ct. 115 (2011).

Accordingly, I have considered the Arbitration Award and the CBA filed by defendants in support of the Motion. Because plaintiff's claims arise out of the arbitration and the conduct of her former bargaining representative under the CBA, these documents are integral to her claims. Moreover, their authenticity is not disputed. In any event, I have considered them only to provide factual background for plaintiff's claims, and not to resolve disputes of fact or decide any of the legal issues. In contrast, I have not considered the Affidavit of David McClure, as it is not integral to plaintiff's Complaint or otherwise appropriate for consideration under Rule 12(b)(6).

## Discussion

### A. Breach of The Duty of Fair Representation

The Supreme Court has "long recognized that a labor organization has a statutory duty of fair representation under the [NLRA]," 29 U.S.C. § 151 *et seq.*, "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 73 (1989) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). Construed generously, plaintiff's complaint appears to allege that defendants breached these duties.

However, as defendants observe, the duty of fair representation imposed under the NLRA only extends to employees covered under the statute. *See, e.g., Jones v. Amalgamated Transit Union*, WMN-04-1488 (D. Md. 2004) (finding that plaintiff failed to state a claim against union because she was not meet the definition of "employee" under NLRA). The NLRA's definition of employee specifically excludes "any individual employed by an employer . . . who is not an

employer as herein defined." 29 U.S.C. § 152(3). And, under the NLRA, "[t]he term 'employer' . . . *shall not include* . . . any State or political subdivision thereof . . . ." 29 U.S.C. 152(2) (emphasis added). As the Fourth Circuit explained in *N.L.R.B. v. Princeton Memorial Hospital*, 939 F.2d 174 (4th Cir. 1991), the exemption of state and political subdivisions "reflects Congress's intention of precluding [federal] involvement in the employment relationships between state and local governments on the one hand, and their employees on the other." *Id.* at 178.

Plaintiff's employer, the Maryland Transit Administration, is a unit of the Maryland Department of Transportation, an agency of the State of Maryland. *See* Md. Code (2008 Repl. Vol., 2012 Supp.), §§ 1-101(f) & 7-201 of the Transportation Article ("Transp."). Therefore, the MTA does not qualify as an "employer" under the NLRA. *See Jones*, WMN-04-1488 (concluding that MTA was excluded from NLRA definition of employer); *accord Byrne v. Md. Transit Admin.*, 58 Md. App. 501, 506, 473 A.2d 956, 958 (1984). Because plaintiff's employer is an agency of Maryland State government, she does not qualify as an "employee" under the NLRA. *See Jones*, WMN-04-1488.

The NLRA defines "labor organization," 29 U.S.C. 152(5), as follows:

> [A]ny organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment or conditions of work.

Because plaintiff is not an "employee," Local 1300 does not qualify as a "labor organization," as defined in the NLRA, with respect to plaintiff.

In sum, because plaintiff is not an "employee," the MTA is not an "employer," and Local 1300 is not a "labor organization" subject to the NLRA, plaintiff cannot state a claim for breach of the duty of fair representation under the NLRA.[6]

B. Discrimination

Plaintiff also alleges employment discrimination in violation of Title VII. Title VII prohibits a variety of discriminatory practices on the basis of "race, color, religion, sex, or national origin" in connection with employment, including discrimination on those bases by a labor union against its members. 42 U.S.C. § 2000e-2(c). Plaintiff's discrimination claim is based on her allegation that "the union and MTA are picking and choosing and not sticking to their guidelines at all times and for all situations." *See* Opp.

Prior to filing suit under Title VII, a plaintiff is required to "exhaust all . . . administrative remedies by filing a charge" with the Equal Employment Opportunity Commission ("EEOC") or a state or local counterpart. *See, e.g., Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). "The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles*, 429 F.3d at 491.

Of import here, the exhaustion requirement is jurisdictional. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013) ("[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative

---

[6] A common law cause of action for breach of a union's duty of fair representation, grounded in breach of contract, is recognized under Maryland law. *See, e.g., Stanley v. Am. Fed. of State and Mun. Emps. Local No. 553*, 165 Md. App. 1, 884 A.2d 724 (2005). However, such a claim would not provide a basis for federal jurisdiction. Moreover, I state no view as to the viability of a claim by plaintiff under Maryland law for breach of the duty of fair representation.

- 10 -

remedies."); *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009). Facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the complaint." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). Plaintiff has not alleged that she filed a charge with the EEOC and exhausted the administrative process before initiating suit, and therefore her Title VII claim must be dismissed for lack of subject matter jurisdiction.

C. <u>Other Federal Claims</u>

On her Civil Cover Sheet, plaintiff checked boxes for the Fair Labor Standards Act and Family Medical Leave Act. *See* ECF 1-1. However, none of her allegations implicate a viable cause of action under these statutes.

The FLSA generally requires employers to pay overtime to nonexempt employees who work in excess of forty hours per week, at a rate of at least time and a half. *See* 29 U.S.C. § 207(a)(1). Plaintiff has offered no facts supporting the contention that she was denied overtime. Therefore, she fails to state a claim under the statute.

Similarly, plaintiff fails to state a claim under the FMLA:

> [T]he FMLA provides covered employees with two types of rights and protections. First, covered employees who take a leave of absence for family or medical reasons qualify for numerous substantive entitlements. Specifically, these employees are "entitled to a total of 12 workweeks of leave during any 12–month period" for family-and health-related matters, and have a right "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."

*Yashenko v. Harrah's NC Casino Co.* LLC, 446 F.3d 541, 546 (4th Cir. 2006) (internal citations omitted). After reviewing plaintiff's Complaint, I can detect no relationship between her allegations and the obligations imposed under the FMLA.

D. State Law Claims

Plaintiff's remaining claims for fraud and wrongful discharge present claims under state law. This Court has original subject matter jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. § 1331(a)(1), which "confers upon district courts 'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012). However, the Court does not have original jurisdiction over plaintiff's state law claims, and so the Court is only authorized to resolve those claims pursuant to the grant of supplemental jurisdiction in 28 U.S.C. § 1367(a). It states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Pursuant to § 1367(c)(3), however, a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." In *Shanaghan v. Cahill*, 58 F.3d 106 (4th Cir. 1995), the Fourth Circuit recognized that under § 1367(c)(3), "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when federal claims have been extinguished." *Id.* at 110; *see also ESAB*, 685 F.3d at 394 ("Section 1367(c) recognizes courts' authority to decline to exercise supplemental jurisdiction in limited circumstances, including . . . where the court dismisses the claims over which it has original jurisdiction."). Further, "the doctrine of supplemental jurisdiction . . . 'is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in a manner that most sensibly accommodates a range of

concerns and values.'" *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 203 (4th Cir. 1997) (quoting *Shanaghan*, 58 F.3d at 106).

The Fourth Circuit has long held that, "under the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met." *Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 616 (4th Cir. 2001); *see e.g., Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 500 (D. Md. 2005) (Chasanow, J.) ("Because the court will dismiss the claims over which it has original jurisdiction, the court will decline to exercise supplemental jurisdiction over the remaining state law claims.").

I have granted defendants' Motion as to plaintiffs' federal claims. In the absence of viable claims that come within federal question jurisdiction, I will exercise my discretion and decline to exercise supplemental jurisdiction over the remaining claims under state law. Therefore, the state law claims are dismissed, without prejudice to plaintiff's right to pursue such claims in state court.

## Conclusion

For the foregoing reasons, plaintiff's Complaint is dismissed, with prejudice, as to her federal claims. I decline to exercise jurisdiction over her claims arising under state law, and therefore those claims shall be dismissed, without prejudice to plaintiff's right to pursue them in state court. An Order follows.

Date: September 3, 2013 /s/
Ellen L. Hollander
United States District Judge